IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BRIAN O'NEAL RICHARDSON | § | |
| (Inmate #68657), | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-07-0039 |
| | § | |
| DEPUTY SIMMONS, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The plaintiff, Brian O'Neal Richardson (Inmate #68657, former TDCJ #1319588, former TDCJ #937351), has filed a civil rights complaint under 42 U.S.C. § 1983, alleging that deputies employed by the Galveston County Sheriff's Department used excessive force against him at the Galveston County Jail in September of 2006. Richardson, who proceeds *pro se* and *in forma pauperis*, has filed an amended version of his complaint. (Doc. # 5). At the Court's request, Richardson has also provided a more definite statement of his claims. (Doc. # 19). The defendants have filed a motion for summary judgment. (Doc. # 33). Richardson has filed a response and a motion for "review of [the] evidence," which the Court construes as a cross-motion for summary judgment in his favor. (Docs. # 34, # 36). After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court **grants** the defendants' motion and **dismisses** this case for reasons that follow.[1]

---

[1]    On October 25, 2007, this case was reassigned pursuant to General Order No. 2007-10 to United States District Judge Melinda Harmon. This case is being handled by the undersigned by agreement of the judges.

I.    **BACKGROUND**

Richardson was arrested and booked into the Galveston County Jail in 2005, on charges of aggravated robbery and theft.[2]  Richardson pleaded guilty to those charges in November of 2007, and was released shortly thereafter upon the completion of his sentence ("time served").  Richardson was arrested again in April of 2008, and charged with felony theft, murder, and tampering with physical evidence.  Richardson remains in custody at the Galveston County Jail, awaiting trial on those new charges.

Richardson filed the civil rights complaint in this case on January 22, 2007.  The incident that forms the basis of this complaint occurred on September 22, 2006, while Richardson was a pretrial detainee.  Richardson complains that, on this date, Deputy James Hobbs used excessive force against him during an altercation that occurred in the administrative segregation portion of the Galveston County Jail.  Richardson complains further that Deputy William Kilburn used excessive force against him while escorting him to the medical department following his encounter with Deputy Hobbs.  The defendants have provided affidavits and Richardson's custodial records from the Jail, which outline the following chronology of events leading up to the alleged uses of force.

On September 17, 2006, Richardson was charged with violating Jail disciplinary rules that prohibit "indecent exposure" when he was observed masturbating in one of the day

---

[2]    The record reflects that Richardson has been in and out of custody at the Galveston County Jail several times.  For purposes of his identification, Richardson has been assigned a variety of inmate or "booking" numbers, including #5856, #28420, #67053, #67938, and #68657. (Doc. # 33, Exhibit C, at 55).

rooms in front of two female deputies.   A hearing on these disciplinary charges was scheduled for September 22, 2006.

Before the disciplinary hearing could be held, Richardson was involved in a separate dispute with deputies on the morning of September 21, 2006.  On this occasion, Richardson approached the "desk deputy" (Deputy White) and demanded a transfer to another area of the Jail because the "H-pod" or "H-Cluster" portion of the Jail, where Richardson was housed at the time, had lost its television privileges.  When Deputy White told Richardson that he was not going to grant his demands, Richardson threatened to punch him in the mouth.  Deputy Smith heard the exchange and warned Richardson not to make threats to staff.  Richardson backtracked, explaining that he did not intend to threaten anybody but that he had been punched in the mouth by another inmate the previous night.  When Richardson refused to name the inmate who allegedly punched him, Deputy White ordered Richardson to return to H-pod.  Richardson refused.

After Richardson refused instructions to return to his cell, an altercation ensued. Eventually, Richardson had to be carried back to H-pod by several deputies.   Once Richardson was back in H-pod, he reportedly began to resist.  The deputies had to put Richardson down on the floor, apply handcuffs, and forcibly place him in his cell.  When Richardson's handcuffs were removed, he began to fight with the deputies.  Richardson was ultimately taken from his cell in H-pod, examined in the medical department, and moved to the "G-pod" or "G cluster" portion of the Jail, which was used to house inmates assigned to

administrative segregation for one reason or another.  Richardson was also charged with

another disciplinary violation for refusing to obey orders.

On the morning of September 22, 2006, a deputy called for assistance because

Richardson had refused repeated orders to "rack up" or return to his cell.  During this

disturbance, Richardson reportedly became upset about the disciplinary charges that had been

filed against him and he attempted to strike Deputy Hobbs.  Deputy Hobbs and several other

deputies, including Deputy Simmons, placed Richardson on the floor and applied handcuffs.

Several deputies, including Deputy Kilburn, escorted Richardson to the medical department,

where an examination revealed no injuries.  Richardson was charged with violating Jail

disciplinary rules by assaulting an officer and refusing to obey orders.

The record reflects that Richardson was found guilty of violating disciplinary rules

in connection with the incidents that occurred on September 17, 21, and 22.  As punishment,

Richardson was given a thirty-day assignment to administrative segregation or lockdown for

each violation.

In the pending civil rights complaint, Richardson claims that he was punched and that

his head was "run into the wall" during the September 22, 2006 altercation with deputies at

the Jail.  Richardson contends that, during this incident, Deputy Hobbs handled him in a

"very disrespectful way" and that Deputy Kilburn used excessive force against him by

slamming his head onto the top of a bunk, bloodying his face.  After screening all of the

pleadings as required by 28 U.S.C. § 1915A, this Court authorized service of process and

requested an answer from Deputy Hobbs and Deputy Kilburn.  These defendants have filed

a motion for summary judgment, asserting qualified immunity and arguing that Richardson cannot demonstrate a constitutional violation or show that their conduct was objectively unreasonable.[3]  The parties' contentions are discussed below under the applicable standard of review.

## II.   <u>STANDARD OF REVIEW</u>

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be

---

[3]      Richardson also sues Deputy Simmons and Deputy Smith, who were present during the September 22, 2006 altercation.  Richardson's claims against these individual defendants are addressed briefly below.

granted, or seeks monetary relief from a defendant who is immune from such relief." 42
U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's
claims fail as a matter of law.  The plaintiff has filed a motion for "review of [the] evidence,"
which, liberally construed, constitutes a cross-motion for summary judgment in his favor.
Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil
Procedure.  Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary
judgment, after adequate time for discovery and upon motion, against a party who fails to
make a sufficient showing of the existence of an element essential to the party's case, and
on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also*
*Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th
Cir. 2002).  In deciding a motion for summary judgment, a reviewing court must determine
whether the "pleadings, the discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and that the movant is entitled to
judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23;
*Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas
essential to the non-movant's claim in which there is an "absence of a genuine issue of
material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The
moving party, however, need not negate the elements of the non-movant's case. *Boudreaux*

*v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,  587 (1986).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co*., 478 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).  The non-movant's burden is not met by mere reliance on the allegations or denials

7

in the non-movant's pleadings. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, a reviewing court will not assume "that the non-moving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075) (emphasis in original).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000); *see also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence

is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.

2003). "Rule 56 does not impose upon the district court a duty to sift through the record in

search of evidence to support a party's opposition to summary judgment." *See id.* (internal

citations and quotations omitted). The Court acknowledges that the plaintiff proceeds *pro

se* in this instance. However, it is well established that "the notice afforded by the Rules of

Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his

burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d

192, 193 (5th Cir. 1992).

## III.   DISCUSSION

### A.     Qualified Immunity

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a violation

of the United States Constitution or of federal law; and (2) that the violation was committed

by someone acting under color of state law. *See Atteberry v. Nocona Gen. Hosp*., 430 F.3d

245, 252-53 (5th Cir. 2005) (internal citations omitted). Richardson alleges that Deputy

Hobbs and Deputy Kilburn used excessive force against him on September 22, 2006, in

violation of his Constitutional rights as a pretrial detainee. Deputy Hobbs and Deputy

Kilburn argue that Richardson has failed to establish a constitutional violation and that, even

assuming that such a violation occurred, they are entitled to qualified immunity from

Richardson's claims against them.

Under the doctrine of qualified immunity, public officials acting within the scope of

their authority are shielded "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 418 (5th Cir. 2008). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 815 (2009). The Supreme Court has characterized the doctrine as protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

To determine whether a government official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts typically conduct a two-prong analysis established forth in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, — U.S. —, 129 S. Ct. at 817. The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' actions were objectively reasonable "in light of clearly

established law at the time of the conduct in question." *See Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The Supreme Court has recently clarified that the two-prong protocol established in *Saucier*, while often appropriate, is no longer mandatory for resolving all qualified immunity claims. *Pearson*, 129 S. Ct. at 818. Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* Thus, the "rigid *Saucier* procedure" need not be followed in any particular sequence. *Id.* In this case, the Court concludes that Richardson's allegations of excessive force warrant examination under both prongs of the traditional *Saucier* inquiry. *See, e.g., Lytle v. Bexar County, Texas*, No. 08-50217, 2009 WL 428452, at *3 (5th Cir. Feb. 23, 2009) (applying both prongs of the *Saucier* protocol in a case involving excessive force during the course of an arrest) (designated for publication).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory

11

allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with the defendants' contention that the plaintiff's excessive-force claim lacks merit. Accordingly, the Court first addresses whether Richardson has raised a genuine issue of material fact on whether the defendants committed a constitutional violation under the standard that applies to excessive-force claims by pretrial detainees.

### 1.    Excessive Force — Pretrial Detainees

The Fifth Circuit has recognized that a pretrial detainee's excessive-force claim, although technically grounded in the Fourteenth Amendment, is properly analyzed under Eighth Amendment standards. *See Petta v. Rivera*, 143 F.3d 895, 912 (5th Cir. 1998) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir.), *cert. denied* 509 U.S. 905 (1993)). Not every malevolent touch by a prison guard gives rise to a constitutional violation under the applicable standard. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In that respect, the constitution excludes from recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation and quotation omitted).

To prevail on an excessive-force claim, a plaintiff must establish (1) that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and (2) that he suffered some injury as a result. *See Eason v.*

*Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing *Hudson*, 503 U.S. at 7; and *Jackson v. Culbertson*, 984 F.2d 699 (5th Cir. 1993)); *see also Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (referencing 42 U.S.C. § 1997e(e), which precludes a civil action by a "prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury" in connection with an excessive-force claim). Relevant factors to consider in evaluating an excessive-force claim include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

The defendants contend that Richardson fails to establish a valid claim because he does not demonstrate that force was used improperly for malicious purposes, rather than in a good faith effort to maintain order. Richardson disputes this, claiming that he was badly beaten for no reason and that his face was made bloody after Deputy Hobbs handled him improperly and Deputy Kilburn slammed his face into a wall and then into the top of a bunk. The defendants contend, however, that Richardson fails to establish a constitutional violation because he cannot show that he suffered the requisite physical injury as a result of the encounter at issue. As discussed below, the record refutes Richardson's claim that force was used improperly or that he suffered a physical injury as a result.

### a.     No Improper Use of Force

13

Deputy Hobbs and Deputy Kilburn have provided affidavits, stating that force was used for the sole purpose of disciplining Richardson, who was behaving in an aggressive and unruly manner. Thus, the defendants argue that Richardson fails to demonstrate a constitutional violation because he does not show that the force used was maliciously applied for the purpose of causing harm, rather than in an effort to maintain order. In particular, the defendants contend that minimal force was used in compliance with Jail policy to subdue Richardson after he became agitated, refused repeated orders, and raised his arm to strike Deputy Hobbs.

Deputy Hobbs states in his affidavit that, on September 22, 2006, Richardson failed to comply with repeated orders to "rack up" or return to his cell. (Doc. # 33, Exhibit 1). Deputy Hobbs grabbed Richardson by his shoulder and pushed him to the ground after Richardson became agitated and raised his arm to strike. Deputy Hobbs states that he "used no greater force than was necessary to control Richardson and bring him to the ground" and that these "defensive measures" were a reasonable response to Richardson's act of raising his arm. Deputy Hobbs reports that, after Richardson was placed in handcuffs, he was escorted to the medical department. Deputy Hobbs states that he did not at any time "hit, strike, or ram" Richardson's head into the wall or bunk and that he did not otherwise handle Richardson improperly.

Deputy Kilburn states in his affidavit that he helped to escort Richardson from the G-Cluster (administrative segregation) to a holding cell in the medical department on September 22, 2006. (Doc. # 33, Exhibit 2). Deputy Kilburn reports that, while handcuffed, Richardson

14

"struggled, resisted, and generally fought against [the deputies] until [they] reached the hallway."  At that time, Richardson "went limp and would not walk."  Deputy Kilburn and the other deputies "were required to drag him by his upper arms the rest of the way" to the medical department.  Deputy Kilburn states that Richardson was placed on a bunk in a holding cell in the medical department, where his handcuffs were removed:

> When arriving at [the medical department] we took Richardson to his cell and placed him on his bunk.  Since Richardson was not being compliant and was essentially being dead weight, we were required to lift him onto the bunk so as to remove his handcuffs.  I placed my knee on his back between his shoulder blades to keep him from struggling.  I held Mr. Richardson still and the other deputies removed his handcuffs.

> When handcuffs are removed from inmates who have been struggling or uncooperative, it is essential that they be placed on their stomach when the handcuffs are removed.  This allows the officer to maintain control during the process of removing the cuffs.  An inmate can be particularly dangerous if he is allowed to be standing when a cuff is removed from the first hand.  He would be able to swing the handcuff with his free hand, endangering anyone nearby.  In this instance with Mr. Richardson, we placed him on the bunk instead of the floor, because of the padding on the bunk and the ease of removing the cuffs.

Deputy Kilburn adds that Richardson's head was not slammed against the wall or the top of the bunk and that Richardson was "never hit or beaten in any way."

In support of their affidavits, the defendants present grievances filed by Richardson after the use of force reportedly occurred on September 22, 2006.  (Doc. # 33, Exhibit 3). In these grievances, Richardson denied refusing to obey orders, but he did not claim that he had been beaten or complain about any injury sustained at the hands of the deputies on September 22, 2006.  The grievances filed by Richardson support the accounts given by

15

Deputy Hobbs and Deputy Kilburn in their affidavits, as well as the written statements provided by other deputies who were present and witnessed the use of force that occurred on September 22, 2006.

The defendants also present Richardson's medical records, which show that he was examined on September 22, 2006, and found to have suffered no injury.  (Doc. # 33, Exhibit 3). The medical records show that, following his altercation with deputies on September 22, 2006, Richardson was seen by a registered nurse.  The nurse observed that Richardson arrived at the medical department escorted by "7 or 8 deputies" and that Richardson was "yelling" and "screaming" and "angry."  Because Richardson was agitated, he was placed in a padded cell.  The nurse evaluated Richardson and noted that he was upset about being placed in lockdown (*i.e.*, administrative segregation).  She noted that Richardson, who had been seen by a physician the previous day (September 21, 2006),[4] had no redness or injuries on his head or scalp.  Observing no harm to his person, the nurse referred Richardson to see a "social worker" because of his "impaired adjustment" to being placed in lockdown.  The medical records of this evaluation show that Richardson did not complain that he had been beaten or abused by the deputies and that there were no injuries consistent with such a claim.

---

[4]    As outlined above, Richardson was taken to the medical department in connection with a use of force that occurred on September 21, 2006, when Richardson became violent after being carried to his cell in H-pod.  Richardson does not complain that he was injured during that incident.  The medical records reflect further that Richardson had made complaints of hypoglycemia or low blood sugar and that he was also subject to increased monitoring because he made occasional threats to harm himself.

The medical records show that Richardson was examined a second time later in the day on September 22, 2006.  The nurse who evaluated Richardson noted that his mood had improved, observing that he was "appropriate and calm."  She counseled Richardson to "verbalize" his problems "constructively" and to have a deputy notify the medical department prior to any future "outbursts."  Richardson was then returned to his cell in administrative segregation.

Richardson was examined again on September 27, 2006, where he complained about shoulder and wrist pain as well as a throbbing headache.  The nurse observed "no pain or trauma upon palpation" of Richardson's head.  Richardson had no other complaints of pain. The nurse scheduled Richardson to have an x-ray of his shoulder.  Richardson was also given an anti-inflammatory (Ibuprofen) for pain.  The nurse determined that no further treatment was needed.  The x-ray taken of Richardson's shoulder on September 29, 2006, revealed no shoulder separation, fracture, or dislocation.  The radiologist noted only "slight soft tissue swelling."  A follow-up x-ray taken on October 20, 2006, revealed that Richardson's shoulder was "normal."

This record demonstrates that, while force was needed to address Richardson's belligerent failure to obey repeated orders, the scope of the force employed was limited to the purpose of enforcing discipline and compliance with Jail policy, rather than maliciously or sadistically employed in bad faith.  Significantly, as discussed further below, Richardson fails to show that he was badly beaten as alleged or that he suffered any injury as a result of the use of force.  It follows that Richardson fails to raise a genuine issue of material fact on

17

whether force was used improperly to cause harm, rather than for the purpose of maintaining order and discipline.  Because Richardson does not demonstrate that force was maliciously or sadistically applied in bad faith, he fails to establish a constitutional violation on the defendants' part.

### b.      Physical Injury

The defendants argue further that, even assuming that Richardson was handled with excessive force, he fails to establish a constitutional violation in this instance because he does not show that he suffered a cognizable injury.  The Fifth Circuit has emphasized that "some physical injury" is an indispensable element of an excessive-force claim.  *Gomez*, 163 F.3d at 923.  The Fifth Circuit has explained further that the prisoner "must have suffered from the excessive force a more than *de minimis* physical injury," adding that "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.* at 924.  However defined, it is clear that some physical injury is required.  As another court in this circuit has concluded, a "physical injury" in this context "is an observable or diagnosable medical condition requiring treatment by a medical care professional."  *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).  In that regard, a more than *de minimis* "physical injury" is not a sore muscle, aching back, scratch, abrasion, or bruise of the type that would not otherwise force a "free world person" to seek medical treatment.  *See id.*; *see also Siglar*, 112 F.3d at 193 (concluding that a sore, bruised ear lasting for three days was *de minimis* and insufficient to support a claim for excessive force).

As noted previously, Richardson alleges that he was badly beaten and that the defendants slammed his head into the wall and the top of a bunk.  As outlined above, however, the medical records refute Richardson's allegations that he was injured as the result of an excessive use of force.  The grievance records, which also contain no allegation of an injury caused by the use of force, also refute Richardson's claims.  Richardson has not raised a genuine issue of material fact on whether he suffered a more than *de minimis* physical injury of the kind required to establish an excessive-force claim.  *See Luong*, 979 F. Supp. at 486; *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1999) (holding that a sore, bruised ear lasting for three days was *de minimis* and not sufficient to raise a valid claim for excessive force).  Because Richardson has not shown that he suffered an actionable injury as a result of the alleged incident with the defendants, he has failed to demonstrate a valid claim for excessive force and he otherwise fails to establish a constitutional violation.

## 2.    Objective Reasonableness

Because Richardson has failed to establish a constitutional violation, the Court need not proceed to the second part of the qualified immunity analysis.  *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007).  Nevertheless, the defendants argue that, even if the force used could be considered excessive, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances.  In support, the defendants have provided an affidavit from a senior official, Galveston County Sheriff's Deputy Joseph Gregory.  (Doc. # 33, Exhibit 3).

Deputy Gregory reports that he has twenty years of experience in the area of corrections and a "Master Jailer's License" from the Texas Commission on Law Enforcement Officers Standards and Education.  Deputy Gregory notes that, based on his training, experience, and review of the records, the efforts of Deputy Hobbs in securing Richardson and Deputy Kilburn in transporting Richardson to the medical department were "reasonable, necessary and appropriate."  Deputy Gregory explains that it is necessary to ensure that inmates comply with orders to move into their cells.  Refusing to obey an order of any deputy or staff member is a violation of the rules and regulations of the Galveston County Jail and is classified as a major infraction.  Deputy Gregory observes further that, by placing Richardson on his stomach and applying pressure to his back, Deputy Kilburn followed the proper technique for removing handcuffs from an unruly inmate. Deputy Gregory adds that the procedure described by Deputy Kilburn allows deputies to quickly and safely remove the handcuffs and retreat before the inmate can cause any harm.

To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*."  *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added).  If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity. *See Malley*, 475 U.S. at 341 (1986).  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if

the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

The record in this case fails to show that the defendants' actions were unreasonable under the circumstances of this case. As noted above, Richardson did not complain that he was handled or transported with excessive force following the September 22, 2006 incident. More importantly, the medical records do not establish that Richardson suffered an injury as a result of the encounter. Richardson's bare allegations are not sufficient to overcome the defendants' assertion of qualified immunity in this instance.

Where qualified immunity is asserted, Richardson, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. Richardson has presented nothing other than his own conclusory, self-serving allegations that the defendants' actions were unjustified. In light of this record, which shows that the defendants responded with force after Richardson violated Jail policies by ignoring repeated orders and acting in a belligerent manner, Richardson's unsupported allegation that the defendants assaulted him for no reason is not sufficient to meet that burden. Richardson has failed to raise a genuine issue of material fact on whether the defendants' actions were not objectively reasonable under the circumstances. The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

### B.    Remaining Defendants

Richardson has also filed suit against Deputy Simmons and Deputy Smith.  The Court did not request an answer from these defendants because Richardson failed to present specific facts showing that these defendants used excessive force against him or that they otherwise had the requisite personal involvement in a constitutional violation.

Personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and the defendants' conduct.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)).  In order to successfully plead a cause of action in § 1983 cases, a civil rights plaintiff must "enunciate a set of facts that illustrate the defendants' participation in the wrong alleged."  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  Because Richardson has not alleged sufficient facts showing that Deputy Simmons or Deputy Smith had the requisite personal involvement in a constitutional violation, Richardson's claims against these defendants are dismissed for failure to state a valid claim for which relief can be granted.

Alternatively, even if Deputy Simmons and Deputy Smith had some involvement in the altercation that forms the basis of the complaint, Richardson's claims against these defendants fail for the same reasons set out above because he has not alleged facts showing that they are not entitled to qualified immunity.  The Fifth Circuit has recognized that when one defending party establishes that the plaintiff has no cause of action, as Deputy Hobbs and Deputy Kilburn have in this case, this defense generally inures also to the benefit of other

22

similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (citations omitted)). For reasons discussed in more detail above, the Court has been able to resolve Richardson's claims based on the motion filed by Deputy Hobbs and Deputy Kilburn. Therefore, the Court dismisses Richardson's claims against Deputy Smith and Deputy Simmons under 28 U.S.C. § 1915(e)(2)(B) as without an arguable basis in law.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The defendants' motion for summary judgment (Doc. # 33) is **GRANTED**.

2.      The plaintiff's cross-motion for summary judgment (Doc. # 36) is **DENIED**.

3.      The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>March 11</u>, 2009.

Nancy F. Atlas
United States District Judge